J-A15010-21

2021 PA Super 183

| | | |
|---|---|---|
| JILL AND JOHN DOE, AS PARENTS AND LEGAL GUARDIANS OF JACK DOE, A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | |
| | : : | No. 1733 EDA 2020 |
| BRIGHT HORIZONS CHILDREN'S CENTER, LLC BRIGHT HORIZONS FAMILY SOLUTIONS, LLC BRIGHT HORIZONS CHILDREN'S CENTER, INC. BRIGHT HORIZONS FAMILY SOLUTIONS, INC. BRIGHT HORIZONS LIMITED PARTNERSHIP HILDEBRANDT LEARNING CENTERS, LLC PENNSYLVANIA STATE UNIVERSITY CREATIVE BEGINNINGS CHILD CARE, LLC CREATIVE BEGINNINGS CHILD CARE CENTER BRIGHT HORIZONS, INC. BRIGHT HORIZONS, LLC | : : : : : : : : : : : : : : : : : | |

Appeal from the Order Entered August 27, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 200101781

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

OPINION BY BOWES, J.:                    **FILED SEPTEMBER 10, 2021**

Jill and John Doe ("Parents"), as parents and legal guardians of Jack

Doe, a minor, appeal from the August 27, 2020 order transferring the

underlying case from Philadelphia County to Berks County based on forum *non conveniens*.[1]  After thorough review, we affirm.

Parents commenced this action in Philadelphia County against Bright Horizons Children's Center, LLC, Bright Horizons Family Solutions, LLC, Bright Horizons Children's Center, Inc., Bright Horizons Family Solutions, Inc., Bright Horizons Limited Partnership, Bright Horizons, Inc. Bright Horizons, LLC Hildebrandt Learning Centers, LLC, Creative Beginnings Child Care, LLC, Creative Beginnings Child Care Center (collectively "Bright Horizons") and the Pennsylvania State University (the "University") on January 16, 2020, seeking damages on behalf of their minor son who allegedly suffered two years of sexual abuse perpetrated by Andrew McCollin at Creative Beginnings Child Care Center (the "Daycare Center") in Reading, Pennsylvania.  They asserted claims for negligence, negligent supervision, negligent hiring and retention, and premises liability relating to Jack's persistent abuse at the Daycare Center.

Following the filing of a second amended complaint, Bright Horizons moved to transfer the case to Berks County.[2]  They alleged that trial in

---

[1] An order in a civil action "changing venue, transferring the matter to another court of coordinate jurisdiction, or declining to proceed in the matter on the basis of *forum non conveniens* or analogous principles" is an interlocutory appeal as of right.  Pa.R.A.P. 311(c).

[2] Prior to Bright Horizons' filing of a motion to transfer the case to Berks County, the University filed a motion to transfer the case to Centre County. *(Footnote Continued Next Page)*

Philadelphia County would be oppressive to them as the Daycare Center would not be able to maintain state-mandated teacher-to-student ratios if the classroom teachers expected to be called to testify at trial were required to travel one and one-half to two and one-half hours to Philadelphia City Hall.[3] *See* Motion to Transfer, 5/14/20, at ¶¶ 9-13.

In support of the motion, Bright Horizons provided an affidavit from Kaitlin Martin, the Regional Manager for Bright Horizons Children's Centers LLC. Ms. Martin stated therein that Pennsylvania law mandates teacher-to-student ratios based on the age of the children. The Daycare Center required twenty-three teachers and three administrators to meet the required ratio each day, and as of March 2020, it employed a total of thirty teachers and administrators. *Id*. at ¶ 12. Ms. Martin maintained that if four or more staff members were unavailable to work at the same time, the Daycare Center could not meet the required ratio. Since Parents identified, by name, nine staff members in their Third Amended Complaint, Bright Horizons anticipated that the presence of at least those nine persons would be required for at least

_____

The University's motion was denied, and it subsequently joined the motion filed by Bright Horizons.

[3] The University had previously filed a motion to transfer this case to Centre County, Pennsylvania, which the trial court denied. After Bright Horizons filed the motion to transfer the case to Berks County, the University joined in that motion. The trial court expressly stated that the University's argument played no role in its decision to transfer the action to Berks County. *See* Trial Court Opinion, 1/11/21, at 2 n.2.

a portion of the trial. Ms. Martin also attested that it would be impractical to hire additional staff, a process that takes three to four weeks and requires background checks and training, to provide the necessary coverage to enable the nine individuals to attend trial.

In contrast, Ms. Martin described how she was able to arrange for the District Attorney's office of Berks County to interview more than thirty daycare center employees in September 2019 without hiring additional staff or violating teacher/student ratios, because it was a ten-to-fifteen-minute drive to the Berks County Courthouse, rather than the minimum one and one-half hour drive to Philadelphia City Hall. *Id*. at ¶¶ 17-18.

Parents filed a response in which they argued that it would not be oppressive for the Daycare Center employees to appear at trial in Philadelphia. Furthermore, they maintained that Philadelphia was more convenient for the corporate witnesses of Bright Horizons who would be flying in to testify at trial. Finally, they alleged that Ms. Martin's affidavit lacked the requisite specificity as to the number of students enrolled in the Daycare Center, their ages, and the total number of staff employed to determine whether the mandated ratio could be met. On its face, Parents contended that Ms. Martin's affidavit established that only nineteen teachers were required each day to comply with the state staffing mandates, and that the daycare center employed thirty teachers, more than enough to adequately staff the daycare center while some teachers were testifying in Philadelphia.

The trial court issued an order permitting the parties to conduct discovery and submit supplemental briefs on this *forum non conveniens* issue. Thereafter, the trial court granted Bright Horizons' motion and transferred the case to Berks County. Parents timely appealed and complied with Pa.R.A.P. 1925(b). The trial court issued its opinion pursuant to Rule 1925(a), and the matter is ripe for our review. We are presented with one issue:

> Did the trial court abuse its discretion by concluding that Bright Horizons would be oppressed by venue in Philadelphia, and therefore by transferring this case to Berks County under Pa.R.C.P. 1006(d)(1), where the pertinent evidence described Bright Horizons' concerns about the inconvenience associated with trial as a general matter and did not demonstrate oppression as a consequence of trial in Philadelphia as compared to Berks County?

Appellants' brief at 2.

The following general principles govern the transfer of a case based on *forum non conveniens*. A plaintiff's forum choice should be "rarely . . . disturbed," is entitled to great weight, and must be given deference by the trial court, but it is not "not absolute or unassailable." ***Powers v. Verizon Pa., LLC***, 230 A.3d 492, 496 (Pa.Super. 2020) (quoting ***Wood v. E.I. du Pont de Nemours & Co.***, 829 A.2d 707, 711 (Pa.Super. 2003) (*en banc*)). In seeking transfer under Rule 1006(d)(1), a defendant must make a detailed factual showing that the chosen forum is oppressive or vexatious, not merely inconvenient. ***See Bratic v. Rubendall***, 99 A.3d 1, 7-8 (Pa. 2014). However, the ***Bratic*** Court clarified that while inconvenience is not enough, "there is no burden to show near-draconian consequences." ***Id***. at 10. As we held in

*Wood*, *supra* at 712, factors such as the relative ease of access to sources of proof, whether compulsory process is available to obtain the attendance of unwilling witnesses, the costs associated therewith, and the possibility of a view are important considerations when measuring oppressiveness. *See also Powers*, *supra* at 497; *Moody v. Lehigh Valley Hosp.-Cedar Crest*, 179 A.3d 496, 502 (Pa.Super. 2018).

The trial court found that Bright Horizons "met their burden of providing detailed information on the record to demonstrate trial in Philadelphia would be oppressive." Trial Court Opinion, 1/11/21, at 9. Noting that nine current teachers were named in Parents' Third Amended Complaint, and that twenty current teachers worked with Andrew McCollin, the court found reasonable Bright Horizons' averment that at least nine and perhaps as many as twenty current teachers would be called to testify at trial. In the court's view, that would require "a dynamic feat of scheduling to comply with the law" regarding staffing while making the teachers available. *Id*. at 10. The court placed great weight on the fact that this feat had already been successfully accomplished in September 2019, when thirty staff members were shuttled by a car service from the daycare to the Berks County Courthouse for interviews with the District Attorney. In that instance, transportation entailed "only a ten to fifteen minute drive," which "played a necessary supporting role in this effort because it minimized the amount of time teachers were out of the classroom." *Id*. at 10. The court concluded that arranging analogous

transit for an approximately ninety minute drive into Philadelphia, coupled with the added complication that the Daycare might not be able to bring in teachers from other facilities for supplemental staff coverage, presented a far heavier burden.

In addition, the following circumstances contributed to the trial court's finding of oppressiveness: that the facts giving rise to the cause of action occurred in Berks County; none of the defendants is located in Philadelphia County; and Parents did not identify any witnesses situated in Philadelphia. *Id*. at 12. Moreover, the trial court found Parents' arguments in opposition to Ms. Martin's affidavit and deposition testimony unpersuasive. While the trial court acknowledged that there were some inconsistencies in Ms. Martin's statements, the court concluded that they did not warrant "jettisoning her testimony *in toto*" as Parents argued. *Id*. at 13. After reading Ms. Martin's deposition "as a whole," the court found her testimony to be trustworthy and credible, especially her uncontroverted testimony about "the scheduling accommodations that occurred when the Berks County District Attorney's Office interviewed thirty staff members." Trial Court Opinion, 1/11/21, at 13.

In reviewing the trial court's decision, we are mindful of the following. A trial court ruling on a petition to transfer venue pursuant to Rule 1006(d)(1) is "vested with considerable discretion . . . to balance the arguments of the parties, consider the level of prior court involvement, and consider whether the forum was designed to harass the defendant." ***Bratic***, ***supra*** at 7. On

appeal, we will only reverse a trial court's decision on a motion to transfer if the trial court abused its discretion. **Id**. "An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence o[f] the record. **Id**. We will uphold a trial court's order transferring venue based on *forum non conveniens* "[i]f there exists any proper basis" for the trial court's determination. **Id**. **See also Powers**, **supra** at 496 (holding "[a] trial court's order on venue will not be disturbed if the order is reasonable after a consideration of the relevant facts of the case.").

Parents contend that "the record evidence did not justify a finding that Philadelphia was an oppressive locale for Bright Horizons to litigate this case." Appellant's brief at 16. They direct our attention to several cases that they maintain underscore the significant burden a defendant bears in overcoming a plaintiff's choice of proper venue. In **Bratic**, **supra**, trial in Philadelphia was found to have crossed the line from inconvenient to oppressive based upon affidavits from seven witnesses who lived more than one hundred miles from Philadelphia and who attested that litigation in Philadelphia would be a disruption and a personal and financial hardship.

In **Moody v. Lehigh Valley Hosp.-Cedar Crest**, 179 A.3d 496, 509 (Pa.Super. 2018), plaintiffs commenced a wrongful death and survival action in Philadelphia for the death of their child due to medical malpractice.

Defendants Sacred Heart Hospital, Lehigh Valley Hospital, Medical Imaging and a number of treating physicians, including, *inter alia,* Dr. Andrew Unger, were located in Allentown, Lehigh County, sixty miles from Philadelphia, while another defendant, Children's Hospital of Philadelphia, was located in Philadelphia.[4]   The Sacred Heart defendants moved to transfer venue to Lehigh County, and offered two affidavits in support of their claim that trial in Philadelphia would be oppressive.  At the last minute, Lehigh Valley Hospital and Medical Imaging joined the motion and submitted ten additional affidavits. The trial court granted the motion concluding that the affidavits created a clear record of oppressiveness.  In particular, the trial court credited Dr. Unger's affidavit averring that a "prolonged absence" for trial in Philadelphia would negatively "impact" his "ability to serve my patients and cover [Sacred Heart] with regard to neonatology care[.]" ***Id***. at 500.

This Court reversed, finding, *inter alia*, that the trial court abused its discretion when it expressly refused to consider the plaintiffs' evidence that the allegedly indispensable Dr. Unger had been absent from work for two weeks for personal and professional reasons and Sacred Heart was able to provide coverage for his absence.  We also noted that the trial court

---

[4] The ***Moody*** plaintiffs represented that there had never been a precedential ruling in this Commonwealth transferring venue to another county on *forum non conveniens* grounds "where there was an active defendant residing in [the chosen forum.]"  Furthermore, they pointed out that negligence occurred in Philadelphia, the chosen forum, and considerable medical care, witnesses, and evidence were located in Philadelphia.

impermissibly placed the burden on the plaintiffs by faulting them for not offering proof that there were witnesses who would find Lehigh County an oppressive venue. While some defendant physicians complained that trial in Philadelphia would disrupt their daycare and parenting responsibilities, we found that trial was not anticipated for two years, and that it could be scheduled for a date certain that would allow these individuals to make the necessary accommodations at that time.

Parents also point to ***Fessler v. Watchtower Bible & Tract Soc'y of N.Y., Inc.***, 131 A.3d 44 (Pa.Super. 2015), consolidated appeals one of which arose out of a motor vehicle accident in Chester County. Some defendants resided in Chester County and others in Philadelphia. The trial court transferred the case to Chester County, and this Court reversed, reasoning that a distance of forty miles from Chester County to Philadelphia was inconvenient but did not rise to the level of oppressiveness.

Finally, Parents direct our attention to ***Walls v. Phoenix Ins. Co.***, 979 A.2d 847 (Pa.Super. 2009), an insurance coverage dispute filed in Philadelphia County involving property located in Monroe County. The defendant insurance company sought to transfer the action to Monroe County because the event giving rise to the litigation occurred there, it would be easier to conduct a site inspection with a jury if trial was conducted there, and no anticipated witnesses were located in Philadelphia County. Following an evidentiary hearing, the trial court granted the motion to transfer, after concluding that

the plaintiff lived in Monroe County, the case was appropriate for a jury view in Monroe County, it would be burdensome for defendant's adjuster to appear at trial in Philadelphia, and any potential contractors or code enforcement officials who would be called to testify would likely be based in Monroe County. This Court reversed, finding that the plaintiff had not proven oppressiveness. We held that the plaintiff's residence was not a proper consideration, the possibility of a view was not enough to negate plaintiff's choice of forum, the insurance adjuster's expenses would likely be compensated by his employer, and the defendant had provided no specifics to support a finding that unnamed witnesses possessed relevant information.

Parents contend that the evidence in this case is insufficient to justify transfer to Berks County on *forum non conveniens* grounds. They maintain, first, that the record does not substantiate that trial in Philadelphia would compel Bright Horizons to close the Daycare Center based on a lack of teachers, or even meaningfully impact its operation. While Parents acknowledge they may call upon some personnel who may have witnessed McCollin's misconduct to testify, Parents maintain there is no reason to call them all, and certainly no reason for these witnesses to testify on the same day. Parents submit further that some teachers could testify via videotaped deposition. Parents also contend there is no reason for the teachers to be present in court during the entire trial as Ms. Martin alluded. In short, Parents argue that with proper management, there would be no need to require the

presence of a large number of teachers to present testimony on any one day, and no support for the trial court's finding that either the Daycare Center would be forced to close during the trial or operate in violation of state mandated teacher-to-student ratios.

In ruling that venue in Philadelphia was oppressive, the trial court placed great weight on evidence that during the criminal investigation, the proximity of the daycare to the District Attorney's office was key to maintaining Daycare operations during a three-day period when the D.A.'s office interviewed every employee of the Daycare Center. Parents contend, however, that the criminal investigation provides a "poor analogue" to a March 2022 trial. Appellants' brief at 22. Even if live testimony is required from twenty or more of these witnesses, Parents maintain that such testimony can be scheduled in such a way as to avoid closing the Daycare. *Id*. at 23. There would be no reason for four or more teachers to be absent per day as Ms. Martin hypothesized in her deposition, and certainly no need for nine teachers to be present in the courtroom throughout the trial. *Id*. Since trial is scheduled to commence at the earliest in March 2022, there is time to plan the least disruptive approach amid Covid concerns, if necessary.

Furthermore, according to Parents, the case focuses "on corporate decisionmaking by a multi-billion-dollar corporation based in Massachusetts." *Id*. Many of the key witnesses will be flying into Philadelphia from Boston, Chicago, Washington, DC, Minnesota, and Florida, regardless of whether trial

occurred in Reading or Philadelphia. Parents point out that the courthouse is a ten-minute drive from the Philadelphia airport. Some witnesses would be traveling from areas near Philadelphia, and Parents maintain that Philadelphia is a much more convenient forum for them.

Finally, Parents point out that the trial court credited Ms. Martin's deposition testimony about the importance of the continuity of care and the additional hardships presented by pandemic protocols, even though she did not deem such factors important enough to delineate in her affidavit.

Ms. Martin, the regional manager for Bright Horizons since July 2018, explained the mandated state teacher-to-student ratios for the various age groups of children. She personally assisted with the coordinating of schedules to facilitate the thirty interviews conducted by the District Attorney's office. *Id*. at 90. She described how she arranged for a car service to retrieve a staff member from the Daycare and transport her to the Berks County Courthouse, fifteen to twenty minutes away. As one staff member was returning, another was sent. "[T]hat way, when that teacher returned to the center, they could return to ratio in their classroom." *Id*. at 131. Thus, they were able to rotate staff out in such a way as to avoid having more than one or two teachers out of the building at any one time for any length of time. *Id*. The teachers could return and provide continuity of care to the children.

Ms. Martin stated that the process "was extremely difficult" and "[i]t took a lot of planning." *Id*. at 132. It required coverage from other centers.

In light of what families had been through, the Daycare Center wanted to make sure that parents knew who would be covering in their child's classroom, going so far as to affix the substitute teacher's picture to the outside of the door. There was considerable preparation, scheduling, and coordination in order to accommodate these interviews. In Ms. Martin's view, it was worth it because the teachers were able to return and finish their shift and catch up with families at the busiest times, drop off and pick up. She stated that it helped the children that their familiar caregiver was back again. *Id*. at 133-34.

Ms. Martin explained further that coordination was required to locate and train staff from other centers who provided coverage throughout the process. Sometimes the Daycare Center director, other regional managers, or Ms. Martin stepped in, none of which would have been possible after the protocols that were put in place post-COVID-19. Even without COVID-19, Ms. Martin expressed concerns about coordinating a similar shuffling of teachers to and from Philadelphia. She noted that due to the longer distance and travel time, the teachers would not likely be able to return to a classroom during the day, which would negatively impact the continuity of care for children. "The longer we have someone covering in a classroom for a given time, the more challenging that can be . . . for classroom management, . . . for behaviors[.]" *Id*. at 158. With COVID-19, she noted her heightened concern for the health and safety of the children.

- 14 -

The trial court did not find persuasive Parents' arguments that Ms. Martins' testimony was untrustworthy. Despite some inconsistencies, the Court found Ms. Martin's testimony to be credible, especially her uncontroverted descriptions of the accommodations that had to be made to arrange for interviews of staff members at the District Attorney's Office located just twenty minutes from the Daycare Center.

Additionally, the trial court was persuaded by Ms. Martin's testimony that as many as twenty daycare teachers would be called to testify.[5] It determined the logistics of providing state-mandated coverage for as many as twenty Daycare teachers being absent from their classrooms for sufficient time to travel to Philadelphia and testify was oppressive. The court relied heavily upon the fact that while as many as thirty staff members could be shuffled from the Daycare to the Berks County Courthouse over the course of several days, a twenty-minute drive, while maintaining the state mandated ratios, replicating those efforts with a ninety-minute drive to Philadelphia would be impossible. Even without the added burden of COVID-19 protocols, the court credited Ms. Martin's testimony that it would be difficult to borrow enough teachers from other Bright Horizons daycares to staff the Daycare for the

---

[5] While Parents only may envision calling a few teachers to testify regarding McCollin's conduct, Bright Horizons may intend to call many or most of the teachers who worked with McCollin to refute allegations that they were aware of his conduct and failed to report it. Such testimony would be relevant to the issue of whether punitive damages are warranted.

many hours regular teachers would be gone. Hiring new staff would be impractical as the process takes weeks. Consequently, the court concluded that either the Daycare would have to close or operate in violation of the state-mandated teacher-to-student ratios, either of which presented an oppressive burden. The court also noted that where none of the underlying facts occurred in Philadelphia, the disruption to business operations and difficulty in obtaining witnesses was more probative of oppressiveness. *See Bratic*, *supra* at 9 (holding "when the case involves a transfer from Philadelphia to a more distant county, factors such as the burden of travel, time out of the office, disruption to business operations, and the greater difficulty involved in obtaining witnesses and sources of proof are more significant").

The question before us is whether, accepting the trial court's credibility determinations, there was enough evidence that trial in Philadelphia would be oppressive to Bright Horizons. Contrary to Parents' claim, the situation herein is not analogous to *Moody*. In that case, the facts giving rise to the cause of action arose both in Philadelphia and in Lehigh County, and the proof was located in both counties. While a case was made that one defendant-physician in Lehigh County was so indispensable to the operation of a defendant-hospital that services could not be provided in his absence, plaintiffs offered proof that this physician had been on vacation or absent due to professional obligations for two weeks at a time and coverage was maintained. Critically, the trial court expressly refused to consider this evidence, which we held constituted

an abuse of discretion. In addition, we found that anticipated problems with childcare and parenting responsibilities could be alleviated with planning and a date certain for trial.

In this case, in contrast to **Moody**, the trial court appropriately considered the totality of the record evidence, including the residency of various witnesses, the distance between Berks County and the Philadelphia City Hall, and the impact of travel time and teacher absence from the Daycare on its operation and the children. Our review of the certified record confirms the accuracy of the trial court's recitation of the relevant facts and testimony. We therefore discern a reasonable evidentiary basis for the trial court's order transferring venue. Hence, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2021