# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| ALEXANDER BRATIC AND JOSEPH PROKO, | : No. 21 EAP 2013 |
| | : |
| | : Appeal from the Judgment of Superior |
| Appellees | : Court entered on 4/23/2012 at No. 2413 |
| | : EDA 2009, reversing and remanding the |
| | : Order entered on 7/9/2009 in the Court of |
| v. | : Common Pleas, Civil Division of |
| | : Philadelphia County at No. 003418 |
| | : February Term 2009. |
| | : |
| CHARLES W. RUBENDALL, II, AND | : |
| KEEFER, WOOD, ALLEN & RAHAL, LLP, | : ARGUED: November 19, 2013 |
| AND RESIDENTIAL WARRANTY CORP. | : |
| OF PENNSYLVANIA AND INTEGRITY | : |
| UNDERWRITERS, INC., | : |
| | : |
| Appellants | : |

## OPINION

**MR. JUSTICE EAKIN**                    **DECIDED: August 18, 2014**

This is an appeal from the Superior Court's reversal of the trial court's order granting appellants' motion to transfer venue based on <u>forum</u> <u>non</u> <u>conveniens</u>. This matter has its roots in a lawsuit filed against appellees in Dauphin County by appellants Residential Warranty Corporation and Integrity Underwriters; appellants Rubendall and the Keefer firm represented Residential and Integrity, respectively, in that lawsuit, which alleged tortious interference with a contractual relationship. The case ended when the trial court granted appellees' motion for summary judgment.

Appellees then initiated the instant action in Philadelphia County, asserting wrongful use of civil proceedings and common-law abuse-of-process claims based on the

earlier dismissed suit.  Pursuant to Pa.R.C.P. 1006(d)(1),[1] appellants petitioned to transfer the case to Dauphin County based on forum non conveniens, alleging the pertinent "witnesses and evidence are located in Dauphin County such that depositions and trial in Philadelphia County will be a hardship to the [appellants] and the witnesses upon whom [appellants] must rely."  Petition to Transfer Venue, 5/20/09, at 3. Appellants presented affidavits of seven witnesses,[2] all of whom live over 100 miles from Philadelphia, each stating that holding the trial there "would be both disruptive and a personal and financial hardship if [the witnesses] should be called to testify at deposition or trial" because they "would have to incur substantial costs for fuel, tolls and, if traveling overnight, for lodging and meals[, and for] every day of deposition or trial in Philadelphia, [they] would be forced to take at least one full day away from [work]."[3]

Relying on this Court's decision in Cheeseman v. Lethal Exterminator, Inc., 701 A.2d 156 (Pa. 1997), the trial court granted the motion to transfer, reasoning: (1) the earlier claim took place in Dauphin County; (2) all appellants are from Dauphin County and none of appellees are from Philadelphia County; (3) each of appellants' eight witnesses lives over 100 miles from Philadelphia County and is "engaged in business activities which make their ability to appear at trial in Philadelphia County far more of a burden than a trial in Dauphin County"; and (4) "[t]he sole connection with Philadelphia

---

[1] "For the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought."  Id.

[2] An eighth witness, Ronald Katzman, Esq., did not submit an affidavit, but the petition alleged that trial in Philadelphia County would be a significant burden to Mr. Katzman due to his age and the location of his primary office in Harrisburg.  Id., at 6 n.11.

[3] See Affidavit of Talmadge, 5/15/09; Affidavit of Rubendall, 5/15/09; Affidavit of Gregory, 5/18/09; Affidavit of Parmer, 5/18/09; Affidavit of Swartz, 5/18/09; Affidavit of Yeselavage, 5/18/09; Affidavit of Stramitis, 5/18/09.

County is the fact that all [appellants] occasionally conduct business in Philadelphia." Trial Court Opinion, 10/09/09, at 3-4. Although not assigning particular weight to each factor, the court held the "record clearly establish[ed] that [appellees'] choice of forum is vexatious and oppressive" and "[t]rying this case in Dauphin County would provide better access to all potential witnesses and other sources of proof such as court documents from the prior … action." Id., at 4.

On interlocutory appeal, a divided Superior Court panel affirmed. Bratic v. Rubendall, No. 2413 EDA 2009, unpublished memorandum at 1 (Pa. Super. filed January 14, 2011) (withdrawn). Upon reargument en banc, a divided court reversed, holding appellants did not carry their burden of demonstrating trial in Philadelphia would be oppressive or vexatious. The en banc court first determined the trial court relied on factors irrelevant to a forum non conveniens analysis. Bratic v. Rubendall, 43 A.3d 497, 501 (Pa. Super. 2012) (en banc) (citation omitted). Specifically, the court noted it was error for the trial court to consider that none of appellees are from Philadelphia, "'since the burden [to transfer venue] is at all times on the defendant, the plaintiff's putative inconvenience is of minor relevance.'" Id. (quoting Walls v. Phoenix Insurance Company, 979 A.2d 847, 851 (Pa. Super. 2009)). Moreover, the court found little probative value that the earlier claim was filed in Dauphin County or that appellants' sole connection to Philadelphia County is occasional business. See id. ("'Claims by a defendant that no significant aspect of a case involves the chosen forum … are not the type of record evidence that proves that litigating the case in the chosen forum is oppressive or vexatious.' (quoting Borger v. Murphy, 797 A.2d 309, 312 (Pa. Super. 2002)) … Further, it is a 'salient point that the mere fact that the site of the precipitating event was outside of plaintiff's choice of forum is not dispositive.'" (quoting Walls, at 852)).

Additionally, the Superior Court reasoned the trial court abused its discretion because appellants "ha[d] not offered particularized averments sufficient to satisfy their burden as required by Cheeseman and its progeny[.]" Id., at 503. The court assumed arguendo the "witnesses' testimony is admissible, relevant, noncumulative, and necessary[,]" id., at 501 n.4, and separated appellants' eight witnesses into two categories. Four witnesses [4] "are officers or employees of the named corporate [appellants,]" and the court assumed these witnesses would be compensated for the costs incurred because of litigation in Philadelphia. Id., at 502 (quoting Walls, at 853).[5] The Superior Court found no other hardship to these witnesses, and reasoned the cost of reimbursing them "must be viewed in relation to litigation costs of attorneys employed in the initial forum." Bratic, at 502. Because appellants' attorneys are from Philadelphia, the court found it would be more expensive to pay their board and travel than it would be to reimburse these witnesses' expenses. Thus, the court found these witnesses provided no support for the trial court's transfer.

The Superior Court characterized the remaining witnesses [6] as engaged in client-based professions; it found "the relevant inquiry is what impact participation

---

[4] The witnesses are William Gregory, Jr., systems manager for Integrity; George Parmer, president of Residential and Integrity; Richard Swartz, corporate counsel for Residential; and Robert Yeselavage, treasurer and operations manager for Integrity. Id., at 502 n.6.

[5] In Walls, an insurance company argued trial in Philadelphia "would be 'extremely burdensome to [the witness], defendant's [insurance] adjuster[,] who was assigned to investigate plaintiff's claim[.]'" Walls, at 852 (citation omitted). The Superior Court noted the witness "is not a hapless citizen being hauled into court, but is a professional insurance claims adjuster who will surely be fully compensated by his client, in an amount that includes related expenses." Id., at 853.

[6] "These witnesses are Charles Rubendall, II, an attorney and a named [a]ppellee; Ronald Katzman, Esq[.], an [sic] Harrisburg attorney and counsel for [appellee] William (continued…)

imposes upon the witness, not his or her clients[,]" id., at 502-03 (citing Cooper v. Nationwide Mutual Insurance Company, 761 A.2d 162, 166 (Pa. Super. 2000)), and appellants were required to "'indicate precisely how the [witnesses'] duties/operations will be affected[,]'" id., at 503 (quoting Cooper, at 166).  In this regard, the court held:

> [T]he lack of specificity as to how the witnesses' participation will affect such business and what that effect will be fails to satisfy [appellants]' burden in this case. …  [T]he affidavits here merely aver conclusory statements that participation in Philadelphia would be "disruptive" without explanation as to why that is the case.

Id.

Addressing appellants' claim that the witnesses' potential participation in pre-trial depositions supports the trial court's transfer of venue, the Superior Court noted trial courts have "additional measures short of a change of venue to mitigate any such impact."  Id. (citing Pa.R.C.P. 4012(a)(2) (providing trial courts may impose "time and place" conditions on discovery or depositions)). The court therefore held the trial court abused its discretion in granting the motion because the trial court relied on factors "irrelevant" to forum non conveniens and appellants' seven affidavits were insufficiently specific to state the factual basis of transfer.

Judge Gantman dissented, finding the trial court did not abuse its discretion.  She first noted "[t]he site of the precipitating event might not be dispositive, but it is relevant[,] … [and] the relevance of this factor depends in part on the respective counties involved." Id., at 504 (Gantman, J., dissenting) (internal citation omitted) (citing Raymond v. Park Terrace Apartments, Inc., 882 A.2d 518, 521 (Pa. Super. 2005)).  Specifically, where a defendant seeks "transfer from Philadelphia to its adjacent or immediately surrounding counties, courts generally decline to place much weight on claims that all significant

---

(…continued)
Gregory; Ronald Stratimis, owner and operator of RJS Consulting; and Charles E. Talmadge, [m]arketing [r]epresentative for Millers Capital Insurance Co."  Id., at 502 n.7.

aspects of the case occurred outside the chosen forum." Id. (citations omitted).[7] Where the transfer is to a more distant county, "factors such as the burden of travel, time out of the office, disruption to business operations, and the greater difficulty involved in obtaining witnesses and sources of proof are more significant due to the greater distances between the … forum[s]." Bratic, at 505 (Gantman, J., dissenting) (citation omitted).[8] That all witnesses were located in Dauphin County, far from Philadelphia, was relevant to the "ultimate determination required to establish oppressiveness under Cheeseman — that trial in another county would provide easier access to witnesses or other sources of proof." Bratic, at 506 (Gantman, J., dissenting).

We granted allowance of appeal to clarify the requirements for transfers based on forum non conveniens as expressed in Cheeseman.

Plaintiffs have long been provided with the initial choice of the court in which to bring an action, if that court has jurisdiction. See Plum v. Tampax, Inc., 160 A.2d 549, 552-53 (Pa. 1960) ("'While the plaintiff ordinarily controls choice of the forum, a court does

---

[7] See, e.g., Hunter v. Shire US, Inc., 992 A.2d 891, 897 (Pa. Super. 2010) (citations omitted) (affirming denial of transfer from Philadelphia to Chester County because they are "adjacent to each other and are readily accessible in a short amount of travel time"); Zappala v. James Lewis Group, 982 A.2d 512, 525 (Pa. Super. 2009) (reversing transfer from Philadelphia to Chester County); Raymond, at 521 ("[T]raveling from Delaware, Bucks, Montgomery or Chester County to Philadelphia is not particularly onerous."); Catagnus v. Allstate Insurance Company, 864 A.2d 1259, 1266 (Pa. Super. 2004) (reversing transfer from Philadelphia to Bucks County); Johns v. First Union Corporation, 777 A.2d 489, 491 (Pa. Super. 2001) (reversing transfer from Philadelphia to Bucks County); Hoose v. Jefferson Home Health Care, Inc., 754 A.2d 1, 5 (Pa. Super. 2000) (reversing transfer from Philadelphia to Delaware County).

[8] See, e.g., Wood v. E.I. du Pont de Nemours & Company, 829 A.2d 707, 713 (Pa. Super. 2003) (en banc) (affirming transfer from Philadelphia to Bradford County, noting witnesses "would be forced to travel over 190 miles to attend trial in Philadelphia"); Borger, at 313 (affirming transfer from Philadelphia to Lehigh County); Dulaney v. Consolidated Rail Corporation, 715 A.2d 1217, 1219 (Pa. Super. 1998) (affirming transfer from Philadelphia to Allegheny County).

not exercise jurisdiction if it is a seriously inappropriate forum for the trial of the action so long as an appropriate forum is available to the plaintiff.'" (quoting Restatement (Second) of Conflict of Laws § 117e (Tentative Draft No. 4, 1957))). This practice derives from the notion of convenience to the plaintiff, not from the desire to pursue verdicts in counties perceived to be more plaintiff-friendly. While a plaintiff need not provide reasons for selecting one venue over another, the doctrine of forum non conveniens "is a necessary counterbalance to insure [sic] fairness and practicality." Okkerse v. Howe, 556 A.2d 827, 832 (Pa. 1989) (citation omitted). This Court has "emphatically stated that the [plaintiff's] choice of forum … is entitled to weighty consideration[,]" id. (citing Walker v. Ohio River Co., 205 A.2d 43, 45 (Pa. 1964)); "[t]hus, the party seeking a change of venue bears a heavy burden in justifying the request, and it has been consistently held that this burden includes the demonstration on the record of the claimed hardships[,]" id. (emphasis in original). When ruling on a petition to transfer venue pursuant to Rule 1006(d)(1), trial courts are vested with "considerable discretion … to balance the arguments of the parties, consider the level of prior court involvement, and consider whether the forum was designed to harass the defendant." Zappala v. Brandolini Property Management, Inc., 909 A.2d 1272, 1283 (Pa. 2006) (citing Cheeseman, at 162). Accordingly, appellate courts review a trial court's ruling on a motion to transfer for an abuse of discretion. Id., at 1284 (citation omitted).

> In this regard, the trial court's ruling must be reasonable in light of the peculiar facts. If there exists any proper basis for the trial court's decision to transfer venue, the decision must stand. An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence o[f] the record.

Id. (internal citations omitted).

Our case law once recognized <u>forum</u> <u>non</u> <u>conveniens</u> transfers based on considerations affecting the court's interests, such as court congestion (as opposed to the parties' interest in having the case resolved in a forum with less backlog), or imposing jury duty and court costs on the people of a community with no relation to the litigation. <u>See</u> <u>Scola v. AC & S, Inc.</u>, 657 A.2d 1234, 1241 (Pa. 1995) (citation omitted); <u>Okkerse</u>, at 832 (citations omitted); <u>Plum</u>, at 553-54 (citations omitted). As lower courts applied these principles on a case-by-case basis, "a policy developed of according court congestion great weight at the expense of the plaintiff losing his chosen forum." <u>Cheeseman</u>, at 160; <u>see</u> <u>generally</u> <u>Incollingo v. McCarron</u>, 611 A.2d 287, 290-91 (Pa. Super. 1992) (holding defendant's assertions of witness convenience did not warrant transfer, but transfer appropriate based on, <u>inter</u> <u>alia</u>, "substantial backlog of civil cases" in Philadelphia courts (citations omitted)).

<u>Cheeseman</u> clarified the factors on which a trial court may rely when ruling on a <u>forum</u> <u>non</u> <u>conveniens</u> motion, holding a petition to transfer venue should be granted only if the defendant "demonstrat[es], with detailed information on the record, that the plaintiff's chosen forum is oppressive or vexatious to the defendant." <u>Cheeseman</u>, at 162. So called "public interest" factors affecting the court's own concerns are not controlling because Rule 1006(d)(1) speaks only in terms of convenience to the parties and witnesses, not the courts. <u>Id.</u>, at 161-62. By way of example, Justice Cappy noted:

> [T]he defendant may meet its burden of showing that the plaintiff's choice of forum is vexatious to him by establishing … the plaintiff's choice of forum was designed to harass the defendant, even at some inconvenience to the plaintiff himself. Alternatively, the defendant may meet his burden by establishing … trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises

involved in the dispute. But, we stress that the defendant must show more than that the chosen forum is merely inconvenient to him.

Id., at 162 (footnote and internal citation omitted). Thus, Cheeseman was not intended to increase the level of oppressiveness or vexaciousness a defendant must show; rather, understood in its articulated context, Cheeseman merely corrected the practice that developed in the lower courts of giving excessive weight to "public interest" factors when ruling on a forum non conveniens motion. Whatever public interest factors exist, they are not determinative; they are only a factor insofar as they bear directly on the ultimate test. And while Rule 1006(d)(1) on its face allows transfer based on "the convenience of the parties[,]" Pa.R.C.P. 1006(d)(1), convenience or the lack thereof is not the test our case law has established: the moving party must show the chosen forum is either oppressive or vexatious.

Turning to the instant matter, we find the trial court's proper consideration of the totality of the evidence justified the order to transfer the case. Trial courts are vested with considerable discretion when ruling on such a motion, and "[i]f there exists any proper basis for the trial court's decision to transfer venue, the decision must stand." Zappala, at 1284 (citation omitted). The Superior Court's stringent examination in isolation of each individual fact mentioned by the trial court was inconsistent with the applicable standard of review; a ruling on a motion to transfer must be affirmed on appeal "[i]f there exists any proper basis for the trial court's decision[.]" Id. (citation omitted).

The trial court expressly noted it did not consider its own interest in court congestion. See Trial Court Opinion, 10/09/09, at 3. This is not to say court congestion is never a consideration — access to justice is certainly a significant concern of our judicial system, which means not only the ability to get into court, but to have the court

expeditiously address the matter — but congestion is not sufficient in itself to justify a change of venue. Ergo, if efficient resolution is precluded by uniquely disruptive court volume, it cannot be impermissible for the court to so note, but only insofar as it bears on the ultimate consideration of venue as oppressive or vexatious. That is, if the congestion contributes to the oppressiveness of the chosen venue, it may be considered, though we reiterate it is not a factor sufficient by itself to warrant transfer, as was the holding of cases before Cheeseman. Here, as noted, it was not considered at all.

Appellees also argue the trial court abused its discretion by considering the irrelevant factor that none of appellees are from Philadelphia. It is true this is peripheral to the issue and insufficient to warrant transfer. Appellees' arguments pointing out the cost of their counsel traveling to Dauphin County is subject to the same logic — by itself, it will not determine the issue. The trial court's mere mention of these facts does not constitute an abuse of discretion or misapplication of the law, however, as it is evident from the court's opinion that transfer was based on other enumerated factors, not the residences of appellees or counsel, nor on congestion of the courts. As with other factors not sufficient for transfer themselves, if residence is probative of oppressiveness, it is not error to reflect upon it, so long as it is not the sole reason for the judge's decision.[9] Indeed, in Cheeseman itself, Justice Cappy pointed out that "access to witnesses or other sources of proof" was an entirely legitimate factor when determining oppressiveness, Cheeseman, at 162, and the plaintiffs are certainly "sources of proof."

---

[9] As in Walls, the Superior Court did not consider that both parties' choice of counsel may change with the venue in which the case must proceed

The Superior Court noted six of the seven affidavits contained identical language, which appellees argue were "plainly inadequate" because they failed to include "details of how the affiant's 'duties' or business would be affected by trial in Philadelphia, a[] claim that the [appellants]' businesses would be seriously hampered or that the affiant's job would be at stake, or an[] averment that the affiant would not be reimbursed for expenses he incurred in traveling to Philadelphia[.]" Appellees' Brief, at 14 (citation omitted). We are unsure what extra detail must be enumerated — the interference with one's business and personal life caused by the participatory demands of a distant lawsuit is patent. The witnesses need not detail what clients or tasks will be postponed or opportunities lost in order for the judge to exercise common sense in evaluating their worth; indeed, no one can foretell such detail. One hopes a judge may comprehend the existence of relevant general disruption from the allegations in the affidavit, sufficiently to rule on the issue.

If we consider only appellants' seven affidavits, there "exists a[] proper basis for the … transfer[.]" Zappala, at 1284 (citation omitted). It cannot be said the trial court misapplied the law or failed to hold appellants to their proper burden to establish oppression. Cf. Catagnus, at 1264 ("[T]he trial court's failure to hold the defendant to the proper burden constitutes an abuse of discretion." (citation omitted)). While typically the "fact that the site of the precipitating event was outside of plaintiff's choice of forum is not dispositive[,]" Walls, at 852 (citations omitted), it is axiomatic that "when the case involves a transfer from Philadelphia to a more distant county …, factors such as the burden of travel, time out of the office, disruption to business operations, and the greater difficulty

involved in obtaining witnesses and sources of proof are more significant[,]" Bratic, 505 (Gantman, J., dissenting) (internal citations omitted).[10]

As with other factors insufficient on their own, distance alone is not dispositive, but it is inherently part of the equation. The Cheeseman decision actually involved two cases, both filed in Philadelphia County and transferred to neighboring Bucks County because of court congestion in the former. Dauphin County, however, is not a neighbor of Philadelphia, and one needs no detailed affidavit to understand the difference in logistics necessitated by a separation of 100 miles. It is not necessary to articulate to a jurist the inherently empirical concept that distance and expedience are inversely proportional. The Superior Court speculated upon the eight witnesses, be they employees or professionals, and the economic consequences as to each is not of record, but it may be presumed without fear of contradiction that to each of these people, time indeed is money, and days of participating in trial in Philadelphia would impact their "duties/operations[.]" Bratic, at 503.

We thus cannot accept appellees' argument that appellants' affidavits were "plainly inadequate to overcome the great deference owed to a plaintiff's choice of forum[.]" Appellees' Brief, at 11. A petition to transfer venue must be supported by detailed information on the record, but "Cheeseman and Rule 1006(d) do not require any particular form of proof. All that is required is that the moving party present a sufficient factual basis for the petition[, and t]he trial court retains the discretion to determine whether the particular form of proof … is sufficient." Wood, at 714 (citing Cheeseman, at

---

[10] Compare Hunter, at 897 (citations omitted), Zappala, at 525, Raymond, at 521, Catagnus, at 1266, Johns, at 491, and Hoose, at 5, with Wood, at 713, Borger, at 313, and Dulaney, at 1219.

162); see also id., at 714 n.6 (collecting cases and noting affidavits have never been held necessary to obtain transfer).

The affidavits here, of course, employed nearly identical language, as the factual basis for each is nearly identical — the oppressiveness of trial 100 miles away, which is manifestly troublesome. The trial judge need not be told like a child how the distance in and of itself makes things more disagreeable and disruptive to the persons obliged to travel. Nor is it a secret requiring iteration that trial in Dauphin County would provide easier access to local appellants and their local witnesses, as well as the relevant court documents on which the very case is based. Further, given the witnesses' respective job titles, we cannot agree with the Superior Court that the affidavits were insufficient to enable the trial court to intuit the professional oppressiveness, more than inconvenience, that is patent therein. Indeed, if a reviewing court may surmise upon no record evidence at all that some witnesses will be paid, it should not be heard to criticize the trial court's crediting actual affidavits from witnesses that would have their businesses interrupted for days at a time, to their obvious personal and financial detriment.

The Superior Court's reliance on its own Walls case is distinguishable, as the motion there was based on the alleged hardship of one insurance adjuster whose job title suggests testifying in court was not an infrequent thing. Further, being paid may mitigate hardship, but it does not eliminate oppressiveness or the disruption of other duties and home life — the physical toll from significant travel or of living from a suitcase. Hardship and oppression are not the same thing, and mitigating the former may ease the latter, but it does not affect the other concerns necessary for consideration.

Neither does payment change the ease of access to evidence identified by Justice Cappy as a major factor in these matters. As between Philadelphia and adjoining Bucks County, the situation in Cheeseman, we speak of mere inconvenience; as between Philadelphia and counties 100 miles away, simple inconvenience fades in the mirror and we near oppressiveness with every milepost of the turnpike and Schuylkill Expressway.

We reaffirm the Cheeseman standard, but hold the showing of oppression needed for a judge to exercise discretion in favor of granting a forum non conveniens motion is not as severe as suggested by the Superior Court's post-Cheeseman cases. Mere inconvenience remains insufficient, but there is no burden to show near-draconian consequences. Although the Superior Court may have reached a conclusion different than the trial court, this does not justify disturbing the ruling; the Superior Court effectively substituted its judgment for that of the trial court, which it may not do. The facts of record allow the finding that trial in Philadelphia would be more than merely inconvenient. As there was clearly a proper evidentiary basis for this conclusion, the trial court did not abuse its discretion in granting the motion transferring the case to Dauphin County.

Order reversed. Jurisdiction relinquished.

Mr. Justice Stevens did not participate in the consideration or decision of this case.

Mr. Chief Justice Castille, Mr. Justice Baer, Madame Justice Todd and Mr. Justice McCaffery join the opinion.

Mr. Justice Saylor concurs in the result.