J-A18038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| PENNENERGY RESOURCES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARMSTRONG CEMENT AND SUPPLY | : | |
| CORP., BUFFALO VALLEY, LTD., | : | |
| GLACIAL SAND AND GRAVEL CO. | : | No. 970 WDA 2020 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered August 10, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-20-001052

| PENNENERGY RESOURCES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARMSTRONG CEMENT AND SUPPLY | : | |
| CORP., BUFFALO VALLEY, LTD., | : | |
| GLACIAL SAND AND GRAVEL CO. | : | No. 13 WDA 2021 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered August 10, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-20-1052

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED: NOVEMBER 4, 2021**

Armstrong Cement and Supply Corp. ("AC&S"), Buffalo Valley Ltd., and

Glacial Sand and Gravel Co. ("GS&G") (collectively, "Defendants"), appeal

from the Orders overruling their Preliminary Objections to venue in Allegheny County, filed by PennEnergy Resources, LLC ("PennEnergy").[1]  We affirm.

AC&S is a Pennsylvania corporation with its principal place of business located at 100 Clearfield Road, Cabot, Pennsylvania.  Butler Valley Real Estate ("BVRE") is the general partner of Butler Valley, Ltd. (the "BV Partnership").  Both are organized under the laws of Pennsylvania.  BVRE and BV Partnership have their principal place of business in Kittanning, Armstrong County, Pennsylvania.  GS&G is a Pennsylvania corporation with a principal place of business also located in Kittanning, Armstrong County, Pennsylvania.

Defendants are subsidiaries of, or are otherwise part of, Snyder Associated Companies.  Snyder Associated Companies is owned, operated, and controlled by David E. Snyder Associated Companies, which, in turn, is owned, operated, and controlled by David E. Snyder ("Snyder") and his family.  Snyder Associated Companies operates as a holding company for companies controlled, operated and/or owned by Snyder, his family and/or Snyder Associated Companies, in varying percentages.

In its Opinion, the trial court described what transpired as follows:

---

[1] Defendants filed both a Notice of Appeal of the trial court's Order overruling their Preliminary Objections to venue (No. 970 WDA 2020), and a Petition for Permission to Appeal (No. 95 WDM 2020).  This Court *sua sponte* consolidated the matters for review.

In 2011, PennEnergy approached [] Snyder [] *et al.* about purchasing certain Marcellus Shale[2] oil and gas leases. Thereafter, Defendants[] AC&S and BVL, as the legal record owners of certain tracts of land (the "Properties") in Butler County (and, in the case of BVL, Armstrong County), Pennsylvania, entered into a series of oil and gas leases (the "Leases") with … PennEnergy. The nature of the agreement(s) was that PennEnergy would lease geologic intervals of the Properties from Defendants ("Leased Properties") and, in exchange, PennEnergy would pay royalties to [AC&S and BVL] in connection with the sale of any natural gas it sourced from the Leased Properties.

[PennEnergy] acquired its interest in the Leases through an Asset Purchase and Sale Agreement ("APSA"), dated February 7, 2012. Subsequent to the APSA, PennEnergy and Winfield Resources, LLC ("Winfield")[,] agreed to jointly develop the Leases and other property under the APSA pursuant to a Joint Development Agreement, dated as of July 12, 2012 ("2012 JDA"). Winfield, a subsidiary of Snyder Associated Companies and an affiliate of Defendants, is a [Pennsylvania] limited liability company … with its principal place of business at the same street and mail address as that maintained by BVL.

Under the terms of the 2012 JDA, PennEnergy is the "Development Operator" and Winfield is the "Non-Operating Interest Holder." Also under the terms of the 2012 JDA, the Leases were part of the oil and gas leases [that] were defined as the JDA's "Joint Interests." In 2014, [AC&S and BVL], each as a "Lessor[,]" executed and delivered to PennEnergy and Winfield, collectively as the "Lessee," certain written documents, each titled "Ratification and Amendment of Oil and Gas Leases" (collectively, the "Ratifications/Amendments"). Under the Ratifications/ Amendments, executed by [AC&S and BVL] on October 28, 2013, all pre-2014 Leases were ratified as "being in full force and effect" and were amended "so as to restate all of the rights and benefits of the Lessor and Lessee under the leases to conform to the provisions of the" Revised Lease Form[,] which was attached to

---

[2] The organic-rich, gas-producing layers of the Marcellus Shale range from less than 5 feet thick to more than 250 feet thick and can be found as deep as 9,000 feet below the ground surface in northeastern and central Pennsylvania. The Marcellus Shale covers 5 states and underlies nearly 75 percent of Pennsylvania.

the Ratifications/Amendments. The Revised Lease Form thereafter became the controlling lease for each of the subject oil and gas Leases.

Following the execution and delivery of the Leases, the 2012 JDA, Ratifications/Amendments, and certain other agreements and documents [(collectively, "Leases and Agreements")] PennEnergy drilled and developed twenty-eight (28) horizontal wells[,] which are producing oil and gas in paying and/or commercial quantities from the Properties' Marcellus Shale Depths, including without limitation certain wells located under the Leases. To date, PennEnergy has invested in excess of One Hundred Million Dollars ($100,000,000) in the subject wells. Based on the terms of the Leases and other above-described agreements, PennEnergy holds a fee simple determinable interest in all of the oil and gas from the Marcellus Shale Depths, on the properties identified in the leases, with certain other enumerated exclusive and vested rights and privileges necessary or convenient for [PennEnergy's] operations.

The parties factually dispute what occurred thereafter, but the essence of the claim is that [AC&S and BVL] sent certain written notices to PennEnergy in October[] 2018, which [PennEnergy] interpreted to be an Election Notice whereby [AC&S and BVL] would elect to take production in-kind in lieu of receiving any royalty payments. Under the various agreements executed, including a Gas Balancing Agreement effective as of October 31, 2018, between Winfield and PennEnergy, Winfield took all gas attributable to [AC&S's and BVL's] royalty interests for the month of November 2018 and every month thereafter. Winfield then sold that gas through Snyder Brothers Gas Marketing and paid [AC&S and BVL] their respective royalty interests under the Leases.

Over a year after Winfield and PennEnergy had been operating under the 2018 Gas Balancing Agreement, [AC&S and BVL] each gave written notice to PennEnergy[,] by separate letters dated December 6, 2019, of certain alleged "breaches and defaults" under the Leases, including that [AC&S and BVL] each were purportedly owed their respective royalty interests payments from "gas produced[,] marketed[,] and sold by [PennEnergy] in November[] 2018 and December[] 2018." Some days later, on December 10, 2019, [AC&S and BVL] also gave written notice to Winfield of what[,] they alleged[,] constituted breaches and defaults under the Leases by PennEnergy, and made certain

- 4 -

demands upon Winfield. On or around December 11, 2019, PennEnergy communicated with GS&G on its plans to cut timber for an access road in one of the contracted areas. In reply, an authorized representative for GS&G stated as follow:

I have been informed that PennEnergy is in breach of its lease covering [GS&G]'s property you wish to re-stake and timber. Until this breach is cured, PennEnergy employees and sub-contractors should refrain from entering the property[;] … any entrance to this property will be considered a trespass by PennEnergy or any of its employees or subcontractors[;] … any such trespass will be referred to the local authorities….

Following this correspondence, PennEnergy sought clarification from Defendants concerning their October[] 2018 Election Notices and Winfield's authority to take all of their royalty gas in-kind, and additionally notifying GS&G that PennEnergy intends to continue its timber operations pursuant to the Leases' terms. Then, by letter dated January 8, 2020, … Defendants denied that they were "necessarily" Winfield's affiliates and asserted that any gas in kind taken by Winfield under the 2018 GBA "has nothing to do with the payments under the Leases which are owed to [Defendants] for their Royalty Gas Interests sold by [PennEnergy] in November and December 2018," that Defendants were owed over $1.3 Million in royalties, and contended that PennEnergy had not cured its purported defaults. Thereafter occurred various similar correspondences amongst the parties, ultimately resulting in Defendants posting no-trespassing signs on the Properties and at the relevant drill pads.

On January 22, 2020, in response to the above-described communications and postage of no-trespassing signs, [PennEnergy] filed a Complaint in Civil Action seeking injunctive relief, declaratory judgment, and claims for defamation *per se*. On February 4, 2020, [the trial court in Allegheny County] granted [PennEnergy's] Motion to Assign Case to Commerce and Complex Litigation Center. For a significant period of time afterwards, [the trial court] entertained argument on several sets of Preliminary Objections and Briefs filed in Opposition thereto. However, the instant appeal specifically pertains to [the trial court's] August 10, 2020, Order (the "August Order") overruling the Defendants' Preliminary Objections on the issue of venue.

Trial Court Opinion, 1/22/21, at 1-6 (footnote added).

Also on August 10, 2020, Defendants filed a Motion to Amend the Order to certify that there existed a substantial issue as to venue, or, in the alternative, that there was a controlling question of law as to which there is a substantial ground for difference of opinion.[3]  The Motion to Amend was denied by operation of law on September 9, 2020.  **See** Pa.R.A.P. 1311(b) (providing that an application shall be deemed denied if not acted on within thirty days). On September 9, 2020, Defendants filed a Notice of Appeal followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Our review of the record discloses that Defendants filed a Petition for Permission to appeal, which was date-stamped on October 9, 2020.[4] PennEnergy filed a Motion to Quash the Appeal on October 21, 2020.  On

_____

[3] 42 Pa.C.S.A. § 702(b) provides that,

> [w]hen a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S.A. § 702(b).

[4] The Petition for Permission to Appeal was docketed as a "Notice of Appeal" by this Court on January 5, 2021.

January 5, 2021, PennEnergy's Motion to Quash was denied without prejudice to present the Motion to a merits panel of this Court.

However, the certified record also includes an Order from this Court **granting** Defendants' Petition for Permission to Appeal, which is date-stamped January 5, 2021. That Order does not appear on this Court's docket. Nevertheless, because this Court has entered an Order granting Defendants permission to appeal the trial court's interlocutory Order, we will consider the merits of the claims raised by Defendants.

Defendants present the following issue for our review:

> Whether venue is improper where a party files an action to declare the rights and title to real property in a county other than the county where the property is located[,] by styling the action as a "declaratory action," in an attempt to circumvent Pennsylvania Rule[s] of Civil Procedure 1052, 1061, and 1062.

Amended Brief for Appellant at 2.[5]

Defendants claim that venue in Allegheny County is improper, as PennEnergy's action "is substantively an action to quiet title." Amended Brief for Appellants at 12 (initial capitalization omitted). Defendants argue that venue, as to quiet title actions, "is improper everywhere except the situs of the property at issue." *Id.* Defendants point out that none of the properties involved are located in Allegheny County. *Id.*

---

[5] This Court granted Defendants permission to file an Amended Brief, so as to include the "Statement of the Questions Involved" omitted from their original appellate brief.

Defendants further argue that PennEnergy's choice to style its action as a declaratory judgment action is not entitled to deference. *Id.* at 13. According to Defendants, declaratory relief is unavailable where, as here, [Plaintiffs] filed the action in anticipation of a lawsuit, "or in an attempt to establish primacy of an otherwise inappropriate forum." *Id.* Defendants further contend that PennEnergy is judicially estopped from arguing that the instant suit is different, in any material respect, from the ejectment actions pending in Butler and Armstrong Counties, as PennEnergy took the opposite position in those cases. *Id.* at 14. In those cases, Defendants claim that counsel for PennEnergy represented that the purpose for the action in Allegheny County was "to resolve questions of title as to the Properties." *Id.* According to Defendants, PennEnergy cannot now take a contrary position in the Allegheny County litigation. *Id.*

Defendants claim that the action brought by PennEnergy lies *in rem*. *Id.* at 15. Defendants posit that, "[w]here a plaintiff seeks *declaratory* relief concerning the ownership rights of a particular parcel of property, such an action is *in rem*." *Id.* (emphasis in original). According to Defendants, PennEnergy seeks a declaration that PennEnergy holds a "fee simple determinable" as to Defendants' properties in Armstrong and Butler Counties. *Id.* The action does not seek specific performance of a contract, but a determination of the current rights and title to the Properties. *Id.* at 16.

Defendants further claim that PennEnergy is engaging in "procedural gamesmanship" by preventing the courts in Armstrong and Butler Counties from adjudicating the rights and titles to the Properties situated in those counties. *Id.* at 17. Defendants argue that, "[t]o force the parties to litigate their property rights in a county other than the county where the properties are located will effectively permit an outside county to dictate to its sister counties the disposition of real property contained entirely within their borders …." *Id.* at 18. According to Defendants, this would constitute a serious infringement upon the rights and "equal judicial independence" of those counties. *Id.*

Finally, Defendants assert that the trial court's discussion regarding the collateral order doctrine in its Opinion is moot, as this Court has granted permission to appeal. *Id.* Defendants claim that the trial court erred by giving deference to the form of the Complaint, rather than the substance. *Id.* at 19. Defendants again argue that the instant action is an *in rem* action to determine the title and/or possession to real property. *Id.* at 22.

A trial court's ruling on a petition to transfer venue pursuant to Rule 1006(d)(1) is "vested with considerable discretion … to balance the arguments of the parties, consider the level of prior court involvement, and consider whether the forum was designed to harass the defendant." ***Bratic v. Rubendall***, 99 A.3d 1, 7 (Pa. 2014). On appeal, we will only reverse a trial court's decision as to the transfer of venue if the trial court abused its

discretion. *Id.* "An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence o[f] the record." *Id.*

Pennsylvania Rule of Civil Procedure 2179 provides, in relevant part, as follows:

**(a)** Except as otherwise provided by an Act of Assembly, by Rule 1006(a.1) or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in

**(1)** the county where its registered office or principal place of business is located;

**(2)** a county where it regularly conducts business;

**(3)** the county where the cause of action arose;

**(4)** a county where a transaction or occurrence took place out of which the cause of action arose; or

**(5)** a county where the property or a part of the property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property.

Pa.R.C.P. 2179(a).

Pennsylvania Rule of Civil Procedure 1006(d)(1) provides that, "[f]or the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought." Pa.R.C.P. 1006(d)(1). However,

[a] plaintiff's forum choice should be "rarely … disturbed," is entitled to great weight, and must be given deference by the trial

- 10 -

court, but it is not "not absolute or unassailable." ***Powers v. Verizon Pa., LLC***, 230 A.3d 492, 496 (Pa. Super. 2020) (quoting ***Wood v. E.I. du Pont de Nemours & Co.***, 829 A.2d 707, 711 (Pa. Super. 2003) (*en banc*)). In seeking transfer under Rule 1006(d)(1), a defendant must make a detailed factual showing that the chosen forum is oppressive or vexatious, not merely inconvenient. ***See Bratic*** … 99 A.3d [at] 7-8 …. However, the ***Bratic*** Court clarified that while inconvenience is not enough, "there is no burden to show near-draconian consequences." ***Id.*** at 10. As we held in ***Wood***, ***supra*** at 712, factors such as the relative ease of access to sources of proof, whether compulsory process is available to obtain the attendance of unwilling witnesses, the costs associated therewith, and the possibility of a view are important considerations when measuring oppressiveness. ***See also Powers***, ***supra***, at 497; ***Moody v. Lehigh Valley Hosp.-Cedar Crest***, 179 A.3d 496, 502 (Pa. Super. 2018).

***Doe v. Bright Horizons Children's Ctr., LLC***, 2021 PA Super 183, at **5-6 (Pa. Super. filed Sept. 10, 2021).

Defendants primarily argue that the proceedings in Allegheny County are *in rem* and, therefore, the appropriate venue is the situs of the Leased Properties. Amended Brief for Appellants at 12. However, our review of the Complaint discloses that PennEnergy has not averred causes of action *in rem*.

In their Complaint, PennEnergy averred causes of action for injunctive relief (Count I), declaratory relief (Count II), and defamation *per se* (Count III). ***See generally*** Complaint, 1/22/20. PennEnergy's claim for injunctive relief (Count I) sought to enjoin Defendants from interfering with their rights pursuant to the Leases and Agreements. ***See id.***, ¶¶ 80-84 (alleging that Defendants have interfered with PennEnergy's exercise of its rights pursuant to the Leases and Agreements); 87 (requesting that the trial court enjoin

- 11 -

Defendants from interfering with PennEnergy's "ongoing reasonable ingress, egress, access to and use of" Defendants' properties "for the purpose of conducting their duties and obligations as the lessee"). In Count II of the Complaint, PennEnergy sought a declaration of its rights under the Leases and Agreements, averring that "[a]ny dispute that Defendants ha[ve] over the non-payment of any royalty interests under the Leases must be resolved exclusively by way of a civil action for breach of the royalty payment covenant." *Id.*, ¶ 93(c). Further, PennEnergy requested a declaration that it holds a "fee simple determinable in all the oil and gas from the Marcellus Shale Depths on the properties identified in the Leases[.]" *Id.*, ¶ 93(a). In Count III of its Complaint, PennEnergy sought damages from Defendants for defamation *per se*, based upon false and malicious statements made by Defendants. *See id.*, ¶¶ 94-101.

Our review of the record discloses that the subject matter of PennEnergy's claims for injunctive relief and for a declaratory judgment is based upon the Leases and Agreements, and is therefore *in personam*, and not *in rem*. *See, e.g., Stefanick v. Munucci*, 333 A.2d 920, 922 (Pa. 1975) (distinguishing between an *in personam* action to compel an agreement of sale for real property from an *in rem* action to quiet title). Further, PennEnergy's defamation action is clearly *in personam* and does not seek to quiet title to the Leased Properties. Accordingly, venue is not restricted to the county in which the Leased Properties are situated. Because we discern no

abuse of discretion in overruling Defendants' Preliminary Objections as to venue, we affirm the Order of the trial court. **See Bratic**, 99 A.3d at 7.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/4/2021