J-A09021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DREW MCGUINNESS AND KATELYN MCGUINNESS H/S AND WILLIAM DUSCH | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 1176 EDA 2021 |
| ELITE-CRETE SYSTEMS, INC., NORTHEAST ELITE CRETE, INC., ROBERT SATTELMYER, JOHN DOES 1-10, ABC CORPORATIONS 1-10 AND SHERWIN-WILLIAMS CORPORATION AND THE SHERWIN-WILLIAMS COMPANY | : : : : : : : : | |

Appeal from the Order Entered May 26, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  June Term 2020 No. 00945

BEFORE:   NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN J.:                **FILED SEPTEMBER 14, 2022**

Drew McGuinness and Katelyn McGuinness, husband and wife, and William Dusch (collectively, "Appellants") appeal from the order transferring their products liability, negligence, and loss of consortium action from Philadelphia County to Allegheny County based on *forum non conveniens*.  We affirm.

We summarize the factual and procedural history of this appeal from the record.  In September 2018, Drew McGuiness ("Mr. McGuinness") and William

_____

[*] Retired Senior Judge assigned to the Superior Court.

Dusch ("Mr. Dusch") were contractors, who along with David Sims ("Mr. Sims"), were refinishing a basement floor of a residence in Whitehall, Allegheny County. *See* Amended Complaint, 9/3/20, at ¶¶ 22-25; *see also* Appellees' Joint Motion to Transfer Venue, 3/18/21, at 3 and Exhibit B (Fire Marshal's Fire Report, 11/29/18 ("Exhibit B" or the "Marshal's report")); Appellants' Response in Opposition to Transfer, 4/7/21, at 1 (unnumbered).[1]

After cleaning and preparing the concrete floor, Mr. McGuinness and Mr. Dusch prepared to stain the floor using "Hydra-Stone," a dyeing or staining agent produced by Elite-Crete Systems, Inc. ("Elite-Crete") and sold by Northeast Elite Crete, Inc. ("Northeast") and Northeast's owner, Robert Sattelmyer ("Mr. Sattelmyer"), and acetone, which was sold by Sherwin-Williams Corporation and the Sherwin-Williams Company (collectively, "Sherwin-Williams").[2] *See* Amended Complaint, 9/30/20, at ¶¶ 5-7, 12. Mr. McGuinness and Mr. Dusch mixed the acetone and Hydra-Stone to spray on the basement floor. *See* Exhibit B.

Mr. McGuinness, Mr. Dusch, and Mr. Sims had sprayed the mixture for approximately fifteen minutes, when Mr. Dusch then saw flames under and around the base of a water heater and then a bright flash. *See id*. A fuel air explosion erupted in the basement and set Mr. Dusch and Mr. Sims on fire.

_____

[1] Appellants have cited to the Marshal's report in their statement of the case and have not challenged the accuracy of the report as setting forth the factual background of this matter.

[2] We collectively refer to Sherwin-Williams, Elite-Crete, Northeast, and Mr. Sattelmyer as "Appellees."

*See id*. Mr. McGuinness, who was going down the stairs to the basement at the time of the explosion, was also set on fire. *See id*. The three men managed to get out of the home, but Mr. McGuinness and Mr. Dusch suffered severe burns over thirty percent of their bodies. *See id*. at ¶¶ 31-32.

Several members of the homeowners' family were at home and heard or felt the explosion. One family member saw the men as they came up from the basement and ran from the home. At least two neighbors saw or heard the explosion and attempted to help the men by spraying them with their garden hoses. *See id*. Local first responders, including police, medics, and firefighters, arrived at the scene. *See id*. Allegheny County Deputy Fire Marshal George Hollenberger ("Deputy Marshal Hollenberger") investigated the explosion, interviewed numerous witnesses, and authored the Marshal's report that included an eleven-page narrative section with twenty-two summaries of interviews of first responders, a utility worker who entered the home after the explosion, as well as Mr. McGuinness, Mr. Dusch, and Mr. Sims. *See id*. As a result of his investigation, Deputy Marshal Hollenberger determined that an open flame from the water heater ignited the vapors from the acetone and Hydra-Stone mixture and resulted in the fuel air explosion in the basement. *See id*.

Appellants filed a complaint in the Philadelphia County Court of Common Pleas asserting claims against Appellees for products liability, negligence, and

loss of consortium.[3]  Appellants filed an amended complaint in September 2020, wherein they stated the same claims and identified Elite-Crete, the producer of Hydra-Stone, as a corporation of the state of Indiana; Northeast, the seller of the Hydra-Stone, as a Pennsylvania corporation based in Bucks County; Mr. Sattelmyer, the owner of Northeast, as a resident of Bucks County;[4] and Sherwin-Williams, the producer of the acetone, as an Ohio corporation.  ***See*** Amended Complaint, 9/30/20, at ¶¶ 4-7, 12.  Appellants, in relevant part, claimed that Mr. Sattelmyer gave them improper instructions on the use of Hydra-Stone with acetone in a residential basement.  ***See id***. at ¶ 8.  Appellees filed answers and new matter and counterclaims,[5] and Appellants replied to the new matter.  The parties thereafter engaged in discovery.

In March 2021, Appellees jointly moved to transfer venue to Allegheny County based on *forum non conveniens*.  Appellees asserted that Appellants' action had no relationship to Philadelphia County and all evidence and

---

[3] Appellants also named unknown individuals and corporations as defendants but have yet to identify additional defendants.  Mr. Sims is not a party to this action.

[4] Appellants' original complaint identified Mr. Sattelmyer as a resident of Philadelphia; but after Mr. Sattelmyer file a preliminary objection, the amended complaint listed his place of residence as Bucks County.

[5] Among the affirmative defenses raised by Appellees were claims of product misuse.  ***See*** Elite-Crete's Answer and New Matter, 9/28/20, at ¶ 173; Sherwin-Williams's Answer and New Matter, 10/2/20, at New Matter, ¶ 8; Northeast's Answer and New Matter, 11/11/20, at New Matter, ¶ 3; Mr. Sattelmyer's Answer and New Matter, 12/2/20, at New Matter, ¶ 3.

witnesses were in Allegheny County. Appellees attached the Marshal's report as an exhibit. *See* Appellees' Joint Motion to Transfer Venue, 3/18/21, at 3-4, 6 and Exhibit B.

The trial court scheduled a remote hearing at which it would consider additional affidavits and deposition evidence. Appellees submitted six supplemental affidavits—one from a neighbor who attempted to assist Mr. McGuinness and Mr. Dusch after the explosion, and five from first responders. All six affiants asserted that they would experience hardships if called to testify at a trial in Philadelphia County. *See* Notice of Filing of Evidentiary Affidavits, 5/12/21, at Exhibits A-F. On May 26, 2021, the court heard oral arguments, including the parties' arguments on whether the six supplemental affidavits were relevant or necessary to Appellees' defense. *See* N.T., 5/26/21, at 14-26. At the conclusion of the hearing, the trial court granted Appellees' joint motion to transfer venue to Allegheny County. Appellants timely appealed,[6] and both Appellants and the court complied with Pa.R.A.P. 1925.

Appellants raise the following issues for our review:

1. Is it reversible error to grant a *forum non conveniens* motion when: (1) the motion is based on [Appellees'] unsubstantiated claim that "21 critical defenses witnesses" are located over 300 miles away from [Appellants'] chosen venue; (2) the trial court accepted [Appellees'] unsubstantiated claim at face value

---

[6] An order changing venue is immediately appealable pursuant to Pa.R.A.P. 311(c). *See* Pa.R.A.P. 311(c) (stating that "[a]n appeal may be taken as of right from an order in a civil action or proceeding changing venue, transferring the matter to another court of coordinate jurisdiction, or declining to proceed in the matter on the basis of *forum non conveniens* or analogous principles").

without conducting any meaningful analysis of the claim; and (3) nothing in the record suggests that the 21 supposed witnesses have any information beneficial to the defense?

2. Is it reversible error to grant a *forum non conveniens* motion when [Appellees] do not claim that they, their businesses, or their employees will be burdened by [Appellants'] chosen venue, which is actually more convenient for [Appellees]?

3. Is it reversible error for a trial court to transfer venue based on factual grounds that [Appellees] did not raise themselves, and that [Appellants] had no chance to rebut?

Appellants' Brief at 3 (renumbered).

The following standards and principles govern our review. We review the trial court's order granting a defendant's motion to transfer venue due to *forum non conveniens* for an abuse of discretion. *See Powers v. Verizon Pennsylvania, LLC*, 230 A.3d 492, 496 (Pa. Super. 2020). This Court will uphold the trial court if there is any proper basis for the trial court's determination. *See id*. We will not disturb the trial court if its order is reasonable after a consideration of the relevant facts of the case. *See id*.

Pennsylvania Rule of Civil Procedure 1006(d)(1) states: "For the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought." Pa.R.Civ.P. 1006(d)(1). The trial court must give deference to a plaintiff's choice of forum and should not grant a defendant's motion to transfer venue based on *forum non conveniens* unless the defendant shows with detailed information on the record that the chosen forum is oppressive or vexatious. *See Cheeseman v. Lethal Exterminator, Inc.*, 701 A.2d 156, 162 (Pa. 1997). A defendant bears a "heavy burden"

when challenging the plaintiff's choice of venue based on *forum non conveniens*. *See Moody v. Lehigh Valley Hospital—Cedar Crest*, 179 A.3d 496, 507 (Pa. Super. 2018). The trial court abuses its discretion if it does not hold a defendant to the proper burden of showing that the plaintiff's chosen forum is oppressive. *See Catagnus v. Allstate Ins. Co.*, 864 A.2d 1259, 1264 (Pa. Super. 2004).

Our Supreme Court has clarified that to show oppressiveness, a defendant need not show "near-draconian consequences" resulting from a trial in the plaintiff's chosen forum. *See Bratic v. Rubendall*, 99 A.3d 1, 10 (Pa. 2014).[7] A defendant must show more than mere inconvenience to himself; he, however, may demonstrate oppressiveness by establishing on the record that trial in another county would provide easier access to witnesses or other sources of proof. *See Cheeseman*, 701 A.2d at 162. If the facts of record allow the trial court to find that the plaintiff's chosen forum is "more than merely inconvenient," this Court should refrain from disturbing the trial court's ruling because we would have reached a different conclusion. *See Bratic*, 99 A.3d at 10 (noting that it is error for this Court to substitute our judgment for that of the trial court).

_____

[7] Although a plaintiff is not prohibited from "forum shopping," *see Zappala v. James Lewis Group*, 982 A.2d 512, 520 (Pa. Super. 2009), the *Bratic* Court noted that the doctrine of *forum non conveniens* "is a necessary counterbalance to insure [sic] fairness and practicality" when a plaintiff is under no obligation to provide reasons for the selection of a forum. *See Bratic*, 99 A.3d at 6 (citation omitted).

Our Supreme Court's decision in **Bratic** is instructive. In that case, the trial court granted the defendants' motion to transfer venue from Philadelphia County to Dauphin County reasoning that: (1) the cause of action took place in Dauphin County; (2) the defendants were from Dauphin County and the plaintiffs were not from Philadelphia County; (3) the defendants' witnesses lived over 100 miles from Philadelphia County and their business activities would have made their appearances in Philadelphia County "far more of a burden" than in Dauphin County; and (4) the sole connection between the plaintiffs' cause of action to Philadelphia County was that the defendants occasionally conducted business in Philadelphia. **See Bratic**, 99 A.3d at 3-4. This Court reversed the trial court. Our Supreme Court granted allowance of appeal, concluded that the trial court did not abuse its discretion, and reversed this Court. **See id**. at 4-7, 10.

In **Bratic**, our Supreme Court reasoned that "the trial court's proper consideration of the totality of the evidence justified the order to transfer the case." **See id**. at 8. The **Bratic** Court emphasized that our appellate standard of review required a determination of whether there was "any proper basis" for the trial court's decision and expressly disapproved of this Court's "stringent examination" of each isolated fact mentioned by the trial court. **See id**. Further, the **Bratic** Court concluded that the affidavits in that case, which alleged the burdens and business disruptions resulting from travel from Dauphin County to Philadelphia, provided a sufficient basis to sustain the transfer of venue. **See id**. at 9. The Court explained that neither **Cheeseman**

nor Rule 1006(d) required a defendant to produce any particular form of proof to show the oppressiveness of a chosen forum. *See id*. Rather, "[a]ll that is required is that the moving party present a sufficient factual basis for the petition [to transfer venue, and t]he trial court retains the discretion to determine whether the particular form of proof [] is sufficient" to transfer venue based on *forum non conveniens*. *Id*. (citations omitted). The burdens associated with travelling, the Court continued, are evident and "simple inconvenience fades in the mirror and near[s] oppressiveness with every milepost of the turnpike and Schuylkill Expressway." *See id*. at 10.

In the present appeal, Appellants' issues all assert error or abuse of discretion in the trial court's decision to transfer their action to Allegheny County based on *forum non conveniens*. Appellants initially argue that Appellees failed to provide an adequate factual record that Philadelphia County was an oppressive venue and that the trial court cited improper factors and merely speculated that the third-party witnesses identified in the Marshal's report were necessary to a trial defense. Appellants further argue that the trial court erred because Appellees did not allege or establish that a trial in Philadelphia County would be oppressive to Appellees' own businesses or personnel[8] and because Philadelphia County was in fact a more convenient

---

[8] Appellants also contend that no prior case has affirmed a transfer of venue based on *forum non conveniens* without a showing that a named defendant would suffer a hardship. As stated above, however, our Supreme Court has recognized that a defendant may establish that the plaintiff's chosen forum is oppressive by showing that trial in another county would provide easier access to witnesses or other sources of proof. *See Cheeseman*, 701 A.2d at 162.

venue for Northeast and Sattelmyer, who were both located in Bucks County. Appellants also assert that the trial court improperly raised arguments on Appellees' behalf and erred by reviewing the pleadings *sua sponte* to discuss product misuse, when Appellees failed to refer to the pleadings in their motion or at the hearing. In sum, Appellants conclude that the trial court abused its discretion by failing to hold Appellees to their "heavy burden" of disturbing Appellants' venue of choice. **See** Appellants' Brief at 25.

The trial court, when explaining its decision to grant Appellees' motion to transfer venue, found that: (1) none of Appellants' causes of action arose in Philadelphia County; (2) Appellees were not located in Philadelphia County and the sole connection between the litigation and Philadelphia County was the fact that the Appellees conducted business in Philadelphia County; (3) none of the third-party fact witnesses live in Philadelphia County; (4) a trial in Allegheny County would provide easier access for a jury view of the scene of the explosion; and (5) the affidavits from the first responders contained "ample evidence" to conclude that trial in Philadelphia County would be oppressive to Appellees. **See** Trial Court Opinion, 9/17/21, at 10-12. The court rejected Appellants' arguments that the fact witnesses relied on by Appellees were irrelevant or unnecessary to a trial defense, reasoning that Appellees' arguments that the witnesses were material to their defense were "not frivolous," and Appellees had a right to present their defense in a manner of their choosing. **Id**. at 12-14.

Following our review, we find that the record supports the trial court's decision to transfer venue from Philadelphia County to Allegheny County. In support of their joint request to transfer venue, Appellees attached a copy of the Marshal's report. That report contained an extensive narrative summary of Deputy Marshal Hollenberger's investigation, including the statements from first responders that they had to turn off the gas to the water heater after the explosion. *See* Exhibit B (indicating that firemen entered the home and shut off the gas valve to the hot water heater after the explosion). The narrative summary explained the deputy marshal's ultimate conclusion that the water heater's open flame ignited the fuel air explosion after Mr. Sims, Mr. McGuinness, and Mr. Dusch sprayed the acetone and Hydra-Stone mixture. *See id*. At the hearing on their joint motion, Appellees argued that the Appellants' failure to extinguish an open flame from the water heater when spraying the acetone and Hydra-Stone mixture in the basement was essential to a determination of whether Appellees were liable for the explosion. *See* N.T., 5/26/21, at 24-25 (indicating that counsel for Northeast and Mr. Sattelmyer argued that Deputy Fire Marshal "systemically went through every witness involved" and reached a conclusion that the fire was caused because of the failure to extinguish an open pilot light under the gas heater).

Appellees also provided the trial court with six supplemental affidavits, one from Deputy Marshal Hollenberger, who authored the Marshal's report, and four from the following first responders: (1) Whitehall Borough Fire Chief Eric Harris ("Fire Chief Harris"); (2) Lieutenant Thomas Neugebauer

- 11 -

("Lieutenant Neugebauer"); (3) Firefighter Mike Petrilli; and (4) Whitehall Borough Police Sergeant Joseph Budd.[9]   ***See*** Notice of Filing of Evidentiary Affidavits, 5/12/21, Exhibits B-F.   As the trial court noted, all of the first responders asserted that they would have to travel three hundred miles from Allegheny County to Philadelphia County, pay the costs of travel personally, and would not be able to take leave time to attend trial.   ***See*** Trial Court Opinion, 9/17/21, at 11; ***see also*** Notice of Filing of Evidentiary Affidavits, 5/12/21, Exhibits B-F.   Fire Chief Harris also averred that having firefighters leave Whitehall Borough to testify in Philadelphia County could pose public safety issues.   ***See*** Fire Chief Harris's Affidavit, 5/10/21, at ¶ 6 (averring that "compelling all of the . . . firefighters that responded to the fire at the subject property to simultaneously appear for a court hearing or trial in Philadelphia County . . . would constitute a public safety issue . . . due to lack of personnel").   Lieutenant Neugebauer, who had entered the home after the explosion with the team of firefighters that turned off the gas to the water heater, further alleged that he would experience personal hardships in

_____

[9] We agree with Appellants that not all of the witnesses referred to by Appellees would have information critical to Appellees' defense.  Sergeant Joseph Budd, for example, did not enter the home after the explosion, and his role appeared to be limited to preventing one of the homeowners from entering the home.   Additionally, nothing in the record indicates what Firefighter Petrilli's role was in responding to the explosion.  Similarly, it does not appear that one of the neighbors, Carlie Recht, who observed the explosion and assisted Mr. McGuinness and Mr. Dusch after the explosion, would have information concerning the cause of the explosion.

arranging childcare for his child with special medical needs. *See* Exhibit B; Lieutenant Neugebauer's Affidavit, 5/10/21, at ¶¶ 5-6.

Based on the foregoing evidence in the record, there is support for the trial court's determination that Appellees' affidavits contained evidence that a trial in Philadelphia County would be oppressive to relevant witnesses for Appellees. Deputy Marshall Hollenberger's, Fire Chief Harris's, and Lieutenant Neuberger's affidavits, when read in conjunction with the Marshal's report, established that Allegheny County provided better access to witnesses than Philadelphia County. *See Cheeseman*, 701 A.2d at 162. Further, the record supports the trial court's conclusion that witnesses, such as Deputy Fire Marshal Hollenberger, Fire Chief Harris, and Lieutenant Neuberger, as well as other first responders who entered and secured the home, had information relevant to Appellees' defenses and that their travels from Allegheny County to Philadelphia County would be oppressive. *See Bratic*, 99 A.3d at 9-10.

Moreover, the record belies Appellants' arguments that the trial court erred or abused its discretion. As in *Bratic*, the trial court here cited several factors, such as the causes of action occurring in Allegheny County, the fact that neither Appellants nor Appellees were residents of Philadelphia, and the possible need for a site visit in granting Appellees' motion. While none of these factors alone would have justified a transfer based on *forum non conveniens*, the trial court here, similar to the trial court in *Bratic*, did not rely on any of these factors as dispositive but considered the totality of the circumstances. *See id*. at 8. Furthermore, the record demonstrates that,

- 13 -

contrary to Appellants' assertions, the trial court did not speculate or act *sua sponte* when considering the legal arguments presented at the hearing based on the entire record before it. As noted above, the record confirms that the trial court had a proper basis in the record to credit Appellees' arguments that the witnesses located in Allegheny County were relevant to their defense and to reject Appellants' arguments that the testimony of the first responders would only be relevant to damages or could be witnesses called during Appellants' case-in-chief at trial. **See** N.T., 5/26/21, at 14-26; Trial Court Opinion, 9/17/21, at 12-14. For similar reasons, the record does not support Appellants' attempts to minimize the potential significance of witness testimony to the defense or their assertions that the hardships could be minimized by alternative means of presenting their testimony by video depositions or remote testimony.

We acknowledge that this is a close case. However, as **Bratic** cautions, the applicable standard of review requires this Court to determine whether there is support in the record for the trial court's ruling based on the totality of the circumstances, not to substitute our own judgment for that of the trial court. **See Bratic**, 99 A.3d at 8. Thus, mindful of our standard of review, we conclude that Appellees presented sufficient evidence of record that Philadelphia was an oppressive venue and that the trial court did not abuse its discretion in transferring Appellants' action to Allegheny County based on its findings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/14/2022</u>